UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW PENNINGTON,

        **Plaintiff,**

v.                                                   Case No: 6:19-cv-2056-PGB-EJK

CGH TECHNOLOGIES, INC.,

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This cause comes before the undersigned, referred from the Court, on Plaintiff Matthew Pennington's Motion to Dismiss Defendant CGH Technologies, Inc.'s (hereinafter "CGH") Counterclaims ("the Motion to Dismiss") (Doc. 34) and Motion to Conditionally Certify the Class (the "Motion to Certify") (Doc. 38). In the Motion to Dismiss, Pennington asserts that the Court should dismiss CGH's counterclaims for fraud and unjust enrichment with prejudice. (Doc. 34.) Plaintiff also seeks to conditionally certify a class pursuant to the FLSA. (Doc. 38.) CGH opposes both motions. (Docs. 37, 41.) For the reasons set forth below, I respectfully recommend that both of the motions be denied.

**I.**    **BACKGROUND**

Pennington initiated this collective action against CGH pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Doc. 1.) CGH answered (Doc. 12) and the undersigned entered an FLSA Scheduling Order (Doc. 15). The FLSA Scheduling Order directed Pennington to answer the Court's interrogatories and for all parties to enter settlement negotiations. (Doc. 24.) Settlement negotiations proved unsuccessful (*see* Joint Settlement Report, Doc. 23); therefore, the Court entered a Case Management and Scheduling Order ("CMSO").

Therein, the Court set the amended pleadings deadline for June 16, 2020. (Doc. 24 at 1.) With leave from the undersigned (Doc. 30), CGH timely filed its Amended Answer (Doc. 31.) Of significance, the Amended Answer asserts two counterclaims against Pennington, one for fraud and the other for unjust enrichment. (*Id.*) Pennington responded to the counterclaims by filing the Motion to Dismiss. (Doc. 34.) About a month later, Pennington filed his Motion to Certify. (Doc. 38.)

The factual allegations underlying the Complaint stem from the employment by CGH of Pennington and others that are similarly situated to him (collectively the "Putative Class Members") (Doc. 1.) The Putative Class Members consist of "All Technicians employed by CGH . . . in the past 3 years who were only paid 'straight time' without the additional half time for hours worked greater than 40 in each workweek." (*Id.* ¶ 12.) As Technicians, the Putative Class Members allegedly "perform[ed] basic computer and security services at airports monitored by the Federal Aviation Authority (FAA) throughout Florida, including locations in Orlando, Tampa, Sanford, Daytona, Melbourne/Cocoa, Sarasota, Cross City, and Ft. Lauderdale." (*Id.* ¶¶ 2, 19, 32.) During the course of their employment, the Putative Class Members worked overtime, without receiving overtime pay, which they assert violates the FLSA. (*Id.* ¶¶ 24, 28.)

In the Amended Answer, CGH explains that it is a subcontractor for the Federal Aviation Administration ("FAA"), suppling Technicians for computer and security services. (Doc. 34, ¶ 11–12.) Technicians generate invoices whenever they are dispatched to an FAA site. (*Id.* ¶ 15.) The invoice contains the number of hours spent and miles traveled by the Technicians, and CGH bases the Technician's pay upon the invoices. (*Id.*) CGH then seeks a reimbursement for the Technician's pay from the prime contractor, who ultimately receives a reimbursement from the FAA. (*Id.*)

In October 2019, CGH terminated Pennington's employment after the FAA allegedly requested that he be "removed from the FAA contract immediately and that he was to return his credentials." (*Id.* ¶ 23.) It was then that CGH learned that Pennington was allegedly "'taking long idle periods,' which CGH interpreted to mean that Pennington was sleeping on the job." (*Id.*) Following the commencement of the FLSA action, CGH investigated Pennington's invoices. (*Id.* ¶¶ 26–39.) Through their investigation, CGH reached the following conclusion:

> Pennington [allegedly] submitted false and inflated invoices by, among other things, billing for 24 hours of work in a day on several different work orders; inflating the actual mileage travelled by a factor of 20 to 50%, and correspondingly inflating the time spent on travel; repeatedly claiming entitlement to, and receiving, a $45 per diem that he did not truly earn; and billing for work that he did not perform.

(*Id.* ¶ 30.) CGH continues with allegations regarding the various invoicing methods Pennington used to augment his compensation. (*Id.* ¶¶ 32, 37, 41–55.) These practices allegedly resulted in overpaying Pennington by at least $150,000. (*Id.* ¶ 31.)

Pennington now moves to dismiss the counterclaims and to conditionally certify this action. (Docs. 34, 38.) The undersigned will address the Motion to Dismiss first, followed by the Motion to Certify.

## II.     MOTION TO DISMISS

Pennington argues that both of the counterclaims should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. 34 at 1.) Pennington posits four alternative theories in support of dismissal. First, CGH fails to establish standing, and second, even if CGH does have standing, the Court should not exercise supplemental jurisdiction over the counterclaims. (*Id.* at 3–5.) Third, CHS's unjust enrichment claim should be dismissed pursuant to the *in pari delicto* doctrine. (*Id.* at 5–7.) Finally, Pennington asserts that the fraud claim should

be dismissed for failure to comply with Rule 9 pleading requirements. (*Id.* at 7–8.)

CGH argues in response that the factual allegations associated with its counterclaims demonstrate standing and the Court's original jurisdiction over the claims. (Doc. 37 at 9–16.) It also contends that the *in pari delicto* defense is premature at the motion to dismiss stage. (*Id.* at 16–19.) Finally, CGH argues that its fraud claim complies with the heightened pleading standards under Rule 9. (*Id.* at 19–20.) Upon review, I find that that CGH has standing, there is diversity jurisdiction over the claims, and the claims should not be dismissed pursuant to 12(b)(6). As such, I respectfully recommend that the Motion to Dismiss be denied.

### A. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a properly served counterclaimant must file a responsive pleading to the complaint that states the defenses for each claim and either admits or denies the allegations therein. Fed. R. Civ. P. 8(a), 12(a)(1)(A). A counterclaimant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Subject matter jurisdiction can be attacked in two ways—a facial attack or a factual attack. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[1] With a facial attack, the court reviews the allegations in the complaint and determines whether the plaintiff has sufficiently alleged subject matter jurisdiction. *Id.* Conversely, a court may look outside the four corners of the complaint, to things such as affidavits and testimony, when a defendant factually attacks the existence of subject matter jurisdiction. *Id.* "A 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings . . . ." *Id.* If jurisdiction is found to be lacking, the court dismisses the case without prejudice. *See Crotwell v.*

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984) (finding that the district court erred when dismissing a case for a lack of subject matter jurisdiction with prejudice instead of without prejudice). When a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631 (2018).

Counterclaimants may also move to dismiss the complaint for "failure to state a claim upon which relief can be granted" prior to filing an answer. Fed. R. Civ. P. 12(a)(4), (b)(6). The Supreme Court has explained that, in order to withstand a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## B. DISCUSSION

### i. *CGH Established Standing*

Pennington argues that CGH does not have standing because it failed to demonstrate that it suffered an actual injury, and whatever injury it suffered cannot be traced to his actions. (Doc. 34 at 3–4.) Moreover, a judgment in CGH's favor would result in a windfall since either the prime contractor or the FAA already reimbursed CGH for Pennington's invoices. (*Id.* at 4.) CGH asserts that it has suffered both monetary and reputational harm due to Pennington's invoicing practices. (Doc. 37 at 9–13.) CGH also contends that it plans to reimburse the prime contractor for any overpayments due to Pennington's actions; thus, a judgment in its favor will redress its financial injuries. (*Id.* at 13–14.) A favorable judgment, according to CGH, will also redress some of the

monetary injuries associated with litigating Pennington's FLSA claim. (*Id.* at 14.) Upon review, I find that CGH has standing.

The Supreme Court in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) articulated three elements for standing. "First, the [aggrieved party] must have suffered an 'injury in fact'. . . . Second, there must be a causal connection between the jury and the conduct complained of . . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" 504 U.S. at 560–61 (internal citations and quotations omitted). An injury in fact is "an invasion of a legally protected interest which is . . . concrete and particularized . . . and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (internal citations and quotations omitted). The causal connection must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *Id.* (citations omitted).

Pennington argues that there is no injury in fact because CGH "was reimbursed by the prime contractor and/or federal government for the billings of Pennington." (Doc. 34 at 4.) CGH contends that the invasion of a legally protected interest occurred when Pennington submitted allegedly inflated invoices, which resulted in CGH paying Pennington more than he was due. (Doc. 37 at 10.) Another court in this District addressed the issue of standing when the aggrieved party was reimbursed. *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1145 (M.D. Fla. 2018). In *Albertelli*, the bank reimbursed the plaintiffs for checks that were improperly deposited into another bank account. 317 F. Supp. 3d at 1145. The defendant argued that the plaintiffs could not establish standing because they were reimbursed. *Id.* The court rejected the defendant's argument explaining that the plaintiffs allege that the checks were deposited "without the right to do so," which was an "invasion of a legally protected interest." *Id.* The court also noted that the defendant

failed to provide any legal authority "suggest[ing] the court should look to recovery from a third-party when determining . . . injury in fact. That type of recovery is typically addressed by the collateral source rule." *Id.* (citing *Muzuco v. Re$ubmitIt, LLC,* 297 F.R.D. 504, 512 (S.D. Fla. 2013)).

Comparably, Pennington is alleged to have submitted inflated invoices, which resulted in payments that he was not entitled to receive. (Am. Answer, Doc. 31.) Receiving payment for work he did not do or miles he did not travel was an invasion of CGH's legally protected interest. Moreover, Pennington does not point the Court to any authority that recovery from a third-party would defeat standing. (*See* Doc. 34 at 3–4.) As such, I find that CGH suffered an injury in fact.[2]

It is Pennington's position that an injury cannot be traced to him because CGH's managerial employees instructed him how to bill, and "CGH had an obligation to ensure that its employees['] billings were accurate before passing them." (*Id.*) Pennington points to his Sworn Statement (Doc. 34-1) as proof that he was invoicing procedures from managerial employees. (*Id.*) In relevant part, the Sworn Statement provides that his supervisor and program manager instructed him "on reporting my hours worked" and "mileage on invoices." (Doc. 34-1 ¶¶ 3–4.)

A causal connection is a "relatively modest burden . . . and even harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes." *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1360 (S.D. Fla. 2018) (internal quotations and citations omitted). The undersigned agrees with CGH's observation that "Pennington does not aver that the CGH Program Manager and his supervisor told him to submit falsified and fraudulent invoices." (Doc. 37 at 12.) Second, CGH alleges that the invoices were maintained on the prime

---

[2] CGH also argues that it suffered a reputational injury, however the Amended Answer does not contain allegations that its reputation suffered due to Pennington's actions. Moreover, does CGH provide the Court with any documentation indicating so.

contractor's database, and they did not have access to them until late 2019. (Am. Answer, Doc. 31, ¶¶ 26–28.) Thus, contrary to what Pennington argues, CGH was not in a position to review the billings for potential fraud during his employment. It was Pennington who decided to submit falsified invoices. Therefore, I find that there is a causal connection between the injury in fact and Pennington's actions.

Third, Pennington argues that because CGH was reimbursed for these invoices, a judgment in its favor would not redress its harm. (Doc. 34 at 4.) CGH contends that a judgment in its favor would redress its harm because it intends to reimburse the prime contractor for any overpayment attributed to Pennington. (Doc. 37 at 13–14.) CGH also argues that a favorable judgment would mitigate the litigation fees associated with the Pennington's FLSA claim. (*Id.*) Therefore, CGH's representations demonstrate that its injuries would be redressed by a favorable judgment.

Based on the foregoing, the undersigned concludes that CGH has established all three elements for standing.

> ii.   **The Court Has Original Jurisdiction Over the Claims**

Plaintiff argues that the Court should not exert supplemental jurisdiction over the fraud and unjust enrichment claims because other courts in this District "declined to exercise supplemental jurisdiction" over similar counterclaims in other FLSA cases. (Doc. 34 at 4–5) (citing *Lee v. Winter Haven Cardiology, P.A.*, 2015 U.S. Dist. LEXIS 183941, *3 (M.D. Fla. July 23, 2015); *Cruz v. Winter Garden Realty, LLC*, 2012 U.S. Dist. LEXIS 176734 (M.D. Fla. Nov. 27, 2012); *Bohenkamp v. JT Private Duty Home Care, LLC*, 2014 U.S. Dist. LEXIS 165925 (M.D. Fla. Nov. 28, 2014)). CGH contends that because its counterclaims are compulsory and there is diversity jurisdiction, the Court should proceed with them. (Doc. 37 at 15–16.)

Counterclaims are either permissive or compulsory. *See* Fed. R. Civ. P. 13(a), (b). A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" while a permissive counterclaim encompasses anything that is not compulsory. *Id.* The Eleventh Circuit applies a "logical relationship" test to determine whether a counterclaim is compulsory or permissive. *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985). "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* (internal quotations omitted). However, the standard for exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) is broader than that for compulsory counterclaims. *Jagroop v. Moran Foods, LLC*, No. 13-62354-CIV, 2014 WL 12600721, at *2 (S.D. Fla. Mar. 4, 2014) (citing *Bakewell v. Fed. Fin. Grp., Inc.*, 2006 WL 739807, *3 (N.D. Ga. Mar. 21, 2006)).

The Amended Answer contains sufficient factual allegations to demonstrate an independent basis for subject matter jurisdiction, specifically diversity jurisdiction. CGH alleges that it is a Maryland corporation, with a principal place of business in Washington D.C.; thus, it is a citizen of Maryland and Washington D.C.[3] (Doc. 31, ¶ 6.) Conversely, Pennington is alleged to be a citizen of Florida. (*Id.* ¶ 7.) There are also factual allegations to support an amount in controversy of at least $150,000, which exceeds the minimum amount for diversity actions. (*Id.* ¶¶ 31, 36–38.) Because the Court has diversity jurisdiction over these claims, they could be filed in federal court independently of the FLSA claims; therefore, there is no need to analyze whether the Court has supplemental jurisdiction over the counterclaims. I respectfully recommend that the

---

[3] A corporation's citizenship is determined by its state of incorporation *and* the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1).

Court find that there is subject matter jurisdiction over the counterclaims.

### *iii.* *CGH States a Claim for Unjust Enrichment*

Pennington argues that CGH cannot bring a claim for unjust enrichment because it is *in pari delicto*. (Doc. 34 at 5–6.) CGH, citing to legal authority from this District in which courts have routinely held that an *in pari delicto* argument is premature at the Rule 12(b)(6) motion to dismiss stage, requests at the Court defer judgment on that issue. (Doc. 37 at 16–17) (citing *Fed. Deposit Ins. Corp. for Orion Bank of Naples, Fla. v. Nason Yeager Gerson White & Lioce, P.A.*, No. 2:13-cv-208, 2013 WL 12200968, at *9 (M.D. Fla. July 22, 2013); *Wiand v. EFG Bank*, No. 8:10-cv-241-T-17MAP, 2012 WL 750447, at *6 (M.D. Fla. Feb. 8, 2012)). The undersigned agrees with CGH.

> The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994) (citing *Henry M. Butler Inc. v. Trizec Properties Inc.*, 524 So. 2d 710 (Fla. 2d DCA 1988)). *In pari delicto* is an affirmative defense. *See Fed. Deposit Ins.*, 2013 WL 12200968, at *9. "[T]o assert an *in pari delicto* defense, a defendant must show that 'the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress.'" *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 802 (11th Cir. 2015) (quoting *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308 (11th Cir. 2013)). Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

Here, the undersigned does not find that the allegations in the Amended Answer indicate the existence of an *in pari delicto* defense. As discussed *supra*, CGH was not aware of Pennington's allegedly fraudulent invoicing tactics until late 2019. In fact, once CGH learned of Pennington's alleged performance issues, it immediately terminated his employment. (Am. Answer, Doc. 31, ¶ 3.) This indicates that CGH was not complicit in Pennington's behavior. Because the face of the Amended Answer does not indicate the presence of an *in pari delicto* defense, I recommend that the Court defer dismissal on that basis at the 12(b)(6) stage. *See Fed. Deposit Ins.*, 2013 WL 12200968, at *9 (finding "that consideration of the[] [*in pari delicto*] defense[] on a Rule 12(6)(6) motion to dismiss is appropriate.").

### iv.  CGH's Fraud Claim Complies with Rule 9

For his final argument, Pennington argues that the fraud counterclaim does not meet heightened pleading standards under Rule 9(b) for three reasons.[4] (Doc. 34 at 7–8.) First, because CGH's Amended Answer "essentially [is] an argument . . . that fraud occurred under the False Claims Act,"[5] any allegations of fraud by Pennington "is essentially saying that the federal government was defrauded by CGH." (*Id.* at 7 (relying on *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983) (providing that in "cases brought under the False Claims Act that the knowledge of an employee is imputed to the corporation when the employee acts for the benefit of the corporation and within the scope of his employment").) Second, Pennington asserts that, because CGH has no damages, it cannot state a claim for fraud. (*Id.*) Third, Pennington argues that "[t]here is nothing pled with particularity in the counterclaim for fraud about Pennington's actual

---

[4]  Pennington does not assert that CGH failed to establish any of the elements for fraud.
[5]  The False Claims Act, 31 U.S.C. §§ 3729–3733, provides that any person who presents a "false or fraudulent claim for payment . . . is liable to the United States Government for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act." 31 U.S.C. § 3279(a).

billings for which CGH was not reimbursed." (*Id.* at 8.)

In a footnote, CGH addresses Pennington's False Claims Act argument by underscoring key language in the *Grand Union* case. (Doc. 37 at 20 n.6.) CGH notes that the *Grand Union* court held that acts of an employee are imputed to the employer when that employee "acts for the benefit of the corporation and within the scope of his employment." (*Id.*) It is CGH's position that by inflating the mileage and hours on the invoices, Pennington was neither working for the benefit of CGH or within the scope of his employment, but rather, for his own personal gain. (*Id.*) As to the damages argument, CGH's counters with legal authority providing that "damages for fraud are not required to be pled with specificity." (*Id.* at 19.) CGH then asserts that it intends to repay the prime contractor, so the prime contractor can then reimburse the FAA for any overpayment stemming from Pennington's alleged invoicing practices. (*Id.* at 20.) In support, CGH proffers a letter from CGH's counsel to the senior counsel of the prime contractor. (Doc. 37-2.) The letter provides that "CGH is determined to prosecute this case to the fullest extent and to completely remediate the injuries suffered by both [the prime contractor] and the FAA." (*Id.* at 4.)

Federal Rule of Civil Procedure 9(b) requires allegations for fraud to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002).

Before addressing Pennington's arguments, the undersigned notes that the Amended Answer is replete with factual allegations surrounding Pennington's fraud. (Doc. 31.) In fact, CGH points to over a dozen instances in which Pennington either allegedly overstated the number of miles traveled or hours worked. (*Id.* ¶¶ 41–55.) These allegations provide dates of the invoices,

how many hours Pennington allegedly work, and how many miles Pennington allegedly overbilled. (*Id.*) These specific factual allegations satisfy the heighted pleading requirements under Rule 9(b).

As for Pennington's arguments, the undersigned finds that they lack merit. First, whether CGH "essentially" states a claim under the False Claims Act is inconsequential to evaluating whether it alleged a claim for fraud, and Pennington fails to offer any legal authority indicating otherwise. Pennington's second and third arguments are standing arguments. As discussed *supra* in Section I(B)(i), CGH does have standing, even if it was subsequently reimbursed by the FAA or the prime contractor. In light of the foregoing, I respectfully recommend that the Court find that CGH's claim for fraud complies with the heightened pleading requirements of Rule 9(b).

### III. MOTION FOR CONDITIONAL CLASS CERTIFICATION

Plaintiff's definition of the class is not entirely clear. (*See* Doc. 1, 38.) In the Motion, Plaintiff indicates that he "seeks to send notice of this case to any <u>Technician who worked for CGH within the three (3) years preceding the filing of the Complaint (Doc. 1) in this matter (October 25, 2019)</u> and also to those who presently work for CGH." (Doc. 38 at 6) (emphasis added). CGH interprets the underlined portion as the class definition. (Doc. 41 at 12–13) (citing to the Mot. to Certify, Doc. 38 at 6). However, the Complaint provides that the Putative Class Members consist of "all Technicians employed by CGH . . . in the past three years who were only paid 'straight time' without the additional half time for hours worked greater than 40 in each workweek." (Doc. 1, ¶ 12.) The undersigned will analyze the appropriateness of conditional class certification under both class definitions.

For the reasons set forth below, I recommend that the Court deny the Motion to Certify, as Plaintiff fails to satisfy either element to conditionally certify a class.

## A. LEGAL STANDARD

Conditionally certifying a collective FLSA action is within the discretion of the court. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). The determination depends on the court's finding "that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Chung v. Affordable Battery, Inc.*, No. 12-60612-CIV, 2012 WL 3759029, *1 (S.D. Fla. Aug. 29, 2012) (quoting *Dybach v. State of Fla. Dept. of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

## B. DISCUSSION

### i. *Pennington Fails to Demonstrate a Desire from Other Employees to Opt-In*

In Plaintiff's Answers to the Court's interrogatories, he indicated that he "believe[s] there are other employees who may still opt-in." (Doc. 16, ¶ 8.) However, in the fifteen months this action has been pending, not a single former or current employee of CGH has opted-in. "[A] plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective. The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself." *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (collecting cases).

This is not to say that the presence of opt-in plaintiffs is the *only* way to demonstrate a desire from other individuals to opt-in. The *Guerra* court found that an affidavit from the plaintiff's colleague demonstrated that "at least one other co-worker desire[d] to join the suit." *Guerra*, 2006 WL 2290512, at *4. However, in this case, Plaintiff has not supplemented the record with affidavits from other employees. Thus, at this stage, the undersigned cannot find that Plaintiff has demonstrated that there is a desire from other employees to opt-in.

Plaintiff does not shy away from the fact that there are no opt-in plaintiffs. (Doc. 38 at 9.) He even recognizes that courts in this District "usually require more than one opt-in Plaintiff." (*Id.*) Yet, Plaintiff argues that he does not have to demonstrate that other employees desire to opt-in because this action is unique: CGH admits a per se violation of the FLSA and the class is similarly situated. (*Id.* at 9–10.) Plaintiff supports its assertion by pointing to Paragraphs 3–7 its own "Statement of Facts" from the Motion. (*Id.*) The Statement of Facts provide:

> 3) Technicians perform basic computer and security services at airports around the country monitored by the AFF ([Sworn Statement of Robert Beach,] (Doc. 37-1, p. 3 ¶ 6).
> 4) CGH employs on average eighty . . . Technicians at any given time around the country to perform this work. (Doc. 37-1, p.3 ¶ 6). The same two Program Managers, John Carlson and Felix Enriquez, who are located in California and Georgia, respectively, oversee all of these Technicians. (<u>Id.</u>). CGH also admitted in its Answer that Plaintiff's co-workers are or were employed in different locations as "Technicians.") (Doc. 12, p. 1 ¶ 3)
> 5) These Technicians are dispatched to airports monitored by the FAA (Doc. 37-1, p. 3 ¶ 7). They create invoices which include the number of hours worked as well as their mileage. (Doc. 37-1, p. 4 ¶ 9).
> 6) CGH then reviews for accuracy the invoices submitted by these Technicians and then pays them on the basis of hours worked and mileage and any other expenses owed. (Doc. 37-1, p. 4 ¶ 12-13).
> 7) Technicians are paid by the hour and regularly work more than 40 hours per work week, but only receive straight time including for hours worked over 40 in a workweek. (Exh. A, p. 4 II. 17-18; *see also* Doc. 16, p. 2 ¶ 7.d.)

(Doc. 38 at 4.)[6]

---

[6] The Sworn Statement of Robert Beach was attached as an exhibit to CGH's Response in Opposition to Plaintiff's Motion to Dismiss CGH's Counterclaims. (Doc. 37-1.) Robert Beach is the manager of Human Resources at CGH. (Doc. 37-1, ¶ 2.) "Exh. A" is attached to the Motion. It is an excerpt from the deposition of Robert Beach. Plaintiff's responses to the Court's interrogatories are at Docket Entry 16.

As a preliminary matter, the undersigned notes that one of CGH's affirmative defenses is that the Putative Class Members performed work that would fall under alternative methods of complying with FLSA's overtime wage provision. (Doc. 12 at 11.) Therefore, it is not CGH's position that they violated the FLSA. Nevertheless, Plaintiff fails to provide any legal authority supporting a waiver of the "desire to opt-in" requirement when the employer admits to violating the FLSA. Thus, the undersigned cannot recommend conditionally certifying this action on this basis alone.

### ii. *Pennington Fails to Demonstrate He Is Similarly Situated*

Even if Plaintiff could establish that other employees desired to join this action, he still fails to demonstrate that the Putative Class Members are similarly situated. "Plaintiffs bear the burden of proving they and the class they seek to represent are similarly situated." *Herrera v. Mattress Firm, Inc.*, No. 17-22048-CIV, 2017 WL 4270619, at *3 (S.D. Fla. Sept. 26, 2017). "The key consideration is that to be 'similarly situated,' there must be 'substantial allegations that potential members were together the victims of a single decision, policy, or plan.'" *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11–cv–00738, 2012 WL 334038, at *2 (S.D. Tex. Feb.2, 2021) (quoting *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)). Other factors include the similarity of the claimant's job requirements or pay provisions. *Dybach*, 942 F.2d at 1567–68.

The Eleventh Circuit utilizes a two-tiered approach when determining whether there is a similarly situated class. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003). The first tier is the notice stage, which is when the Court decides whether notice of the action should be given to class members. *Id.* The Court may rely only on pleadings and affidavits, and it may apply a "fairly lenient standard" when deciding whether the claimants

are similarly situated. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). The second stage is usually precipitated by a motion for decertification, after discovery is essentially complete. *Id.* At that stage, the court "makes a factual determination on the similarly situated question." *Id.* (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)). The *"*Eleventh Circuit has stressed that '[n]othing in [the Eleventh Circuit's] precedent . . . requires district courts to utilize this approach.'" *Kelley v. Taxprep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2014 WL 10248251, at *1 (M.D. Fla. Apr. 2, 2014) (quoting *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)).

Because the Motion to Certify is being brought during the notice stage, the undersigned will apply a "fairly lenient standard" when determining whether the Putative Class Members are similarly situated. But even utilizing the lenient standard, the undersigned does not find that the Putative Class Members are similarly situated.

If Plaintiff intended to use the definition from the Motion to Certify, it would result in conditionally certifying a class that includes *all* Technicians. He does not qualify the class definition to include only Technicians who worked overtime and were not compensated at an overtime wage rate. Thus, his class definition could include Technicians who never worked overtime. Such a diverse group of class members makes conditional certification inappropriate in this action. *See White v. SLM Staffing LLC*, No. 8:16-cv-2057-T-30TBM, 2016 WL 4382777, at *3 (M.D. Fla. Aug. 17, 2016) (denying conditional certification as the claimants were not similarly situated).

Plaintiff's definition from the Complaint does not pose the same problem as the definition from the Motion because it is limited to Technicians who worked overtime without receiving overtime pay. Nevertheless, the counterclaims and the 2020 Department of Labor ("DOL")

settlement demonstrate that Pennington is not similarly situated to the remaining Putative Class Members.

CGH argues that Pennington is not similarly situated because his "claims of entitlement to overtime wages are . . . grounded on fraudulent representations, [and thus,] proof of [his FLSA] claims would depend on a highly individualized and detailed demonstration that the hours he submitted to CGH were legitimate." (Doc. 41 at 15.) It also asserts that Pennington is not similarly situated because of a "settlement-in-principle with DOL with respect to the overtime that is due to all of the [T]echnicians" who will each be "made whole with respect to the overtime wages due to them." (*Id.* at 16.) In anticipation of the latter argument, Pennington asserts that "such an argument is simply an attempt by CGH to avoid a collective class." (Doc. 38 at 11.) Nevertheless, the undersigned finds that Pennington is not similarly situated.

CGH's counterclaims are based on the premise that Pennington's reported mileage and hours are inaccurate. Therefore, CGH cannot simply rely on the hours Pennington reported on his invoices, like it would with the other Putative Class Members. Instead, CGH would have to review each individual invoice for accuracy. Such an individualized inquiry "would contravene the basic theory of judicial economy upon which the certification of collective actions is based." *West v. Verizon Commc'ns, Inc.*, No. 8:08-cv-1325-T-33MAP, 2009 WL 2957963, at *7 (M.D. Fla. Sept. 10, 2009).

Because Pennington is not similarly situated to the remaining Putative Class Members under either definition, I respectfully recommend the Court deny the Motion to Certify.[7]

---

[7] The undersigned notes that the class definition includes employees with wage and hour claims dating back to October 2016, but the DOL settlement includes only claims from December 31, 2017. (Doc. 41 at 17) ("Each [T]echnician will be made whole with respect to the overtime wages due for a two . . . year lookback period from December 31, 2019."). It is unclear whether any future

IV.     **RECOMMEDATION**

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that that Court

1. **DENY** the Motion to Dismiss (Doc. 34).

2. **DENY** the Motion to Certify (Doc. 38).

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on February 12, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties

---

opt-in plaintiff would be precluded from seeking claims prior to October 2017, as the DOL found that "CGH's actions in paying straight time instead of overtime wages . . . were not willful." (Doc. 41 at 7.)