**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **MATTHEW PENNINGTON, Individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiff** | ) | **Case No. 6:19-CV-02056-Orl-40EJK** |
| **v.** | ) | |
| **CGH TECHNOLOGIES, INC., A Foreign For-Profit Corporation** | ) | |
| **Defendant.** | ) | |
| **CGH TECHNOLOGIES, INC.,** | ) | |
| **Counterclaim Plaintiff** | ) | |
| **v.** | ) | |
| **MATTHEW PENNINGTON,** | ) | |
| **Counterclaim Defendant.** | ) | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S MEMORANDUM IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant and Counterclaim-Plaintiff CGH Technologies, Inc. ("CGH"), by counsel, submits this response in opposition to Plaintiff Matthew Pennington's ("Plaintiff's" or "Pennington's") Motion for Summary Judgment ("Motion" or "MSJ"). The Court should deny the Motion in its entirety.

## I. INTRODUCTION

On October 25, 2019, mere weeks after CGH terminated Pennington for cause at the request of the Federal Aviation Administration ("FAA"), Pennington filed his Complaint against CGH alleging that CGH violated the Fair Labor Standards Act ("FLSA") when it did not pay him overtime. CGH had learned by then that an FAA representative had witnessed Pennington "taking long idle periods" (*i.e.*, sleeping on the job). As it turns out, that was only the tip of a much larger iceberg.

Months later, in late January 2020, Pennington filed his answer to the Court's interrogatories. There, he made the astonishing claim to have worked about 4,547 overtime hours between September 19, 2016 and October 10, 2019 – or ***14 hours per day, 5 days per week, 52 weeks per year, for nearly three (3) years straight***. Until then, CGH had no reason to suspect that Pennington had engaged in a routine practice of inflating and falsifying the hours he reported working and the mileage he reported traveling, and of seeking reimbursement for per diems he did not truly earn.

Yet, that is precisely what CGH discovered when its subject matter experts undertook a comprehensive and detailed review of each and every one of the invoices submitted by Pennington during that nearly three (3) year period. And the record now before the Court not only raises genuine issues of material fact, but irrefutably

demonstrates, that Pennington overcharged CGH at least $198,809 for hours he did not work, mileage he did not travel, and per diems he did not earn; that he did so directly disregarding the instructions from CGH that technicians must submit accurate invoices; that CGH had no knowledge of Pennington's fraudulent conduct during his tenure as a technician because Pennington found ways to obscure it and game the system; and that Pennington's fraudulent conduct unquestionably has damaged CGH, with the only "hypothetical what if" being the question of degree.

There is no basis for the Court to grant summary judgment as to any one of the issues raised in Pennington's Motion. Pennington failed to meet his burden to establish that CGH violated the FLSA when it did not pay him overtime wages. The record raises an issue of fact as to whether Pennington ***actually worked*** overtime hours for which he was not compensated. CGH's investigation revealed a sound basis to challenge 93 % or 4,228 of the 4,547 overtime hours that Pennington alleges he worked. Only 318 alleged overtime hours are not challenged, and that is only because CGH gave Pennington the benefit of the doubt. On this record, clear credibility issues preclude summary judgment as to even a single hour of overtime. Because Pennington has not established a violation of the FLSA, the issues of willfulness and good faith are not ripe. Summary judgment on these issues is improper as well because willfulness is a jury question and genuine issues of material fact exist as to good faith.

Summary judgment on CGH's Counterclaims is improper too. CGH is the real party in interest and has Article III standing to assert its claims because Pennington directed his fraudulent conduct toward CGH, and received pay directly from CGH in

*CGH dollars* for hours he did not work, miles he did not travel, and per diems he did not earn. That KBR reimbursed CGH for those amounts only compounds the injury to CGH. Precisely because of Pennington's fraudulent conduct, CGH faces the distinct possibility that it will not win the re-compete on the contract with KBR. Further, CGH is on the hook to reimburse KBR for the full extent of the overcharges found by the fact-finder in the event that Pennington is judgment-proof and, regardless, will be required to reimburse KBR for the amount of its markup on Pennington's fraudulently billed hours. For the same reasons, CGH will prove that it suffered actual damages as a result of Pennington's fraud. Finally, Pennington's *in pari delicto* defense must fail because CGH was not even aware of, much less complicit in, Pennington's fraudulent billing practices. The Court should deny Plaintiff's Motion in its entirety.

## II. STANDARD OF REVIEW

In deciding a summary judgment motion, if there is a conflict between the parties' allegations or in the evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant the summary judgment motion." *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "[T]he judge's role is not to weigh the evidence or to assess credibility, but to determine whether there is a genuine issue for trial." *Posada v. James Cello, Inc.*, 135 F. App'x 250, 252 (11th Cir. 2005).

## III. FACT ISSUES EXIST AS TO PLAINTIFF'S FLSA OVERTIME CLAIM

"'To prove a violation of the FLSA, a plaintiff employee bears the initial burden of proving that he performed work for which he was not properly compensated.'" *Cusumano v. Maquipan Int'l, Inc.*, 390 F. Supp. 2d 1216, 1220 (M.D. Fla. 2005) (SJ denied on FLSA overtime claim); *accord West v. Verizon Servs. Corp.*, No. 8:08-CV-1325, 2011 WL 208314, at *6 (M.D. Fla. Jan. 21, 2011) (effectively same). Plaintiff relies on the invoices he submitted to CGH and his unsupported claim that those invoices were reviewed "for accuracy" as proof that he worked overtime. (MSJ 5). Genuine issues of material fact exist as to CGH's liability for even a single hour of overtime.

Foremost, contrary to Plaintiff's claim, CGH was not able to review Plaintiff's invoices for "accuracy" because it never had full administrative access to TrackVia until late 2019. (SOF[1] ¶ 17).[2] Plaintiff worked remotely; thus, during Plaintiff's tenure, CGH relied on the invoices he submitted, expected them to be accurate, and paid him on the basis of those invoices. (*Id.* ¶¶ 1-6; *see also* JSOF ¶ 17). In response to Plaintiff's claim in this case to have worked about 4,547 overtime hours between September 2016 and October 2019[3], CGH instructed its technician subject matter experts, Alan Smith and Thomas Gentry ("CGH's Experts"), to undertake a comprehensive and detailed invoice-by-invoice review of each and every one of the invoices submitted by Plaintiff

[1] Throughout, "SOF" refers to Defendant's Statement Of Disputed Facts, while "JSOF" refers to Joint Stipulation of Agreed Material Facts (Dkt. 65).

[2] TrackVia is the prime contractor's automated system for tracking the progress of Work Orders issued by the FAA to CGH's electronic security technicians.

[3] If you take Pennington's claim at face value, it would mean that he worked **over 14 hours per day, 5 days per week, for 52 weeks per year, for three (3) years in a row**. (SOF ¶ 16).

to CGH during the relevant timeframe. (SOF ¶ 18). Smith and Gentry devoted 101 hours in total over a five (5) month period to this investigation, reviewing the invoices and frequently referencing corresponding entries in TrackVia. (*Id.*). Through this review, Smith and Gentry found that Plaintiff routinely submitted false and inflated invoices to CGH and that his claimed overtime hours were highly suspect. (*Id.*).[4]

CGH's Experts identified "frequent instances when a work order was assigned to another technician, yet Mr. Pennington billed time on the same day on the same work order"; "frequent instances when TrackVia gave no indication that Mr. Pennington was actually at an FAA site on the date that Mr. Pennington was billing time"; and "a number of instances where Mr. Pennington claims that he was installing new parts on a given day, yet TrackVia indicates that the new parts were not even shipped by the date Mr. Pennington claims to have installed them." (SOF ¶ 20).

In their invoice-by-invoice review, CGH's Experts found that Plaintiff billed in excess of 24 hours of work in a day on at least one occasion (and at or near 24 hours of work in a day on several other occasions) by spreading out his recorded time over different work orders; and routinely charged 12 hours per day to qualify for the $45 per diem, on work order tasks which should have taken only a fraction of that time to diagnose and fix. (SOF ¶ 22).[5] CGH's Experts also proffered a series of "opinions as

---

[4] Pennington's fraudulent conduct previously went undetected because Pennington worked remotely; submitted his time in a data dump once or twice a month; and spread out his recorded time over multiple work orders in a given day, such that his total hours claimed for a single day were not readily apparent. (SOF ¶¶ 29-31).

[5] During the period September 1, 2016 to October 10, 2019, 96.4% of the invoices Plaintiff submitted to CGH involve charges for 12 hours or more per day. (SOF ¶ 19).

to the reasonable amount of time it should take a reasonably competent technician to resolve the typical issues encountered" most frequently in the field – for example, that "troubleshooting camera issues should take no more than one hour" as the standard fix is to replace the camera, which itself should take no more than four hours. (*Id.* ¶ 21). "Pennington routinely billed 10+ hours, not including travel time, to diagnose problems and replace cameras." (*Id.*).

CGH relied on the experts' own review, analysis and guidelines to calculate the amounts overcharged by Pennington on the invoices he submitted to CGH during the relevant period. (SOF ¶¶ 23-28). Importantly, CGH typically gave Plaintiff the benefit of the doubt– where CGH's Experts were unable to render an opinion whether or not the hours charged on a certain invoice were reasonable, CGH did not challenge those hours. CGH also calculated the inflated mileage traveled and mileage expenses, as well as overcharged travel hours and per diems. (Id. ¶ 24-25, 27). CGH's investigation has revealed a **sound and principled basis to challenge <u>4,228 of the 4,547 hours</u> of overtime Plaintiff purports to have worked – or <u>93%</u>** of the alleged overtime hours. (*Id.* ¶ 28). Further, the irrefutable evidence that Plaintiff billed CGH for a total of 5,363 hours which he did not work and demonstrably overcharged CGH nearly $200,000 in time and expenses over a three (3) year period raises a very serious credibility issue as to the legitimacy of the 318 purported overtime hours which CGH does not expressly challenge (again, giving Plaintiff the benefit of the doubt). (*See id.*). To find that Plaintiff worked ***any*** overtime hours on this evidentiary record would be improper, as

it would require the Court to make a credibility determination. *See West*, 2011 WL 208314, at *9 (a jury must evaluate the evidence and make a credibility determination on FLSA liability for overtime where genuine issues of material fact exist as to whether plaintiff actually worked the overtime hours claimed).[6]

Plaintiff relies on *Hansen v. ABC Liquors, Inc*. to argue that "CGH's allegation of falsification does not defeat CGH's liability under the [FLSA] for failing to pay Pennington the time and one-half rate." (MSJ 6). But *Hansen* explained that "set-offs cannot cause a plaintiff's wages to fall below the statutory minimum" and held that **resolving the "issue necessarily involves factual determinations as to what exactly was** paid and/or **owed**[.]" No. 3:09-cv-966, 2009 WL 3790447, at * 3 (M.D. Fla. Nov. 9, 2009) (emphasis added). Here, Plaintiff's overtime claims are based on hours that he did not work (*i.e.*, he was not owed wages for those hours in the first place). *See id.; see also Garcia v. Nachon Enters, Inc.*, No. 15-23416-CIV, 2016 WL 1077107 (S.D. Fla. Mar. 18, 2016) ("to the extent [plaintiff's] overtime claims are based on the hours he did not work, the Defendants' counter-claims do not conflict with the set-off rule");

[6] *Accord Posada*, 135 F. App'x at 252 (reversing district court's grant of summary judgment on FLSA claim where there was "evidence sufficient to raise a factual issue as to whether Posada actually worked overtime hours for which he was not properly compensated"); *Centeno v. I & C Earthmovers Corp*., 970 F. Supp. 2d 1280, 1289 (S.D. Fla. 2013) ("Thus, there still remains an issue of fact as to whether the plaintiffs worked overtime hours for which they were not compensated. At trial, the jury will need to weigh the credibility of the plaintiffs against the competing evidence presented by the defendants to determine if any overtime hours are owed to the plaintiffs.") (denying plaintiff's MSJ); *Hernandez v. Stringer*, 210 F. Supp. 3d 54, 60-61 (D.D.C. 2016) (given that "the Court cannot make credibility determinations", "the issue of the number of hours of work plaintiff actually performed may ultimately be one for a jury") (finding SJ on FLSA liability improper where defendants presented evidence that plaintiff over-reported time). *Malamphy v. Abundant Life Home Health Agency, Inc.*, No. 8:16-cv-327, 2017 WL 2876310 (M.D. Fla. May 4, 2017), which Plaintiff relies on, is inapposite. In that case, there was no dispute that the plaintiffs worked overtime hours.

*Rivero v. Lefeld & Son*, No. 12-81154-CIV, 2014 WL 2095219, at *4 (S.D. Fla. May 20, 2014) (similar). Thus, the "set-off rule" does not apply and the Court should deny the Motion as to CGH's liability under the FLSA given the disputed fact issues.

## IV. <u>THE ISSUE OF WILLFULNESS IS UNRIPE AND IS A JURY QUESTION</u>

The three (3) year statute of limitations period applicable to actions arising out of "willful" violations of the FLSA only applies where the plaintiff meets its burden to prove that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-35 (1988). A showing of mere negligence is insufficient. *See id.*

Plaintiff asserts, without support, that CGH's admission that it paid him straight time for each hour worked (including hours he reported in excess of 40 hours per week) "[c]learly" shows a willful violation of the FLSA. (MSJ 6). As set forth in Section III, Plaintiff has not established a violation of the FLSA, much less a "willful" violation. Thus, the question of willfulness is not ripe for consideration. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.,* 495 F.3d 1306, 1324 (11th Cir. 2007) (reversing district court ruling that two-year limitation period applied where "triable issues of fact remain as to some Plaintiffs' claims that they worked overtime without" pay). Moreover, summary judgment on the question of willfulness is not appropriate because it is a jury question. *See McGuire v. Hillsborough Cty., FL*, 511 F. Supp. 2d 1211, 1218 (M.D. Fla. 2007) ("whether a defendant committed a willful violation is a jury question") (denying SJ on willfulness); *accord Morrison v. Quality Transports Servs., Inc.*, 474 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007) (similar). Further, in any event, Plaintiff fails to meet his burden

to establish willfulness. He points to no evidence to show that CGH knowingly or with "reckless disregard" violated the FLSA when it did not pay Pennington overtime (and, again, has not even established that CGH violated the FLSA in the first place).

## V. <u>THE ISSUE OF GOOD FAITH SIMILARLY IS UNRIPE</u>

If the Court holds that genuine issues of material fact exist as to the question whether a violation of the FLSA occurred (and it should), then the Court should deny Plaintiff's Motion as to CGH's good faith affirmative defense on the grounds that the issue is not ripe for consideration. *See Cusumano*, 390 F. Supp. 2d at 1222–23 (plaintiff did not establish violation of FLSA and, thus, consideration of the good faith defense under 29 U.S.C. § 260 is premature) (denying SJ motion).[7]

Plaintiff first argues that, if willfulness is established, then good faith cannot be established as a matter of law. (MSJ 6-7). Plaintiff relies on *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, which holds that **a jury's finding** of willfulness forecloses a judge from finding that the employer acted in good faith. 515 F.3d 1150, 1167 (11th Cir. 2008). *Alvarez Perez* thus impliedly reaffirms that willfulness is a jury question and, further, that summary judgment on willfulness and good faith alike is improper here.

Plaintiff next contends that summary judgment on CGH's good faith defense is

[7] *See also Davila v. Menendez*, 717 F.3d 1179, 1186 (11th Cir. 2013) ("Before making a determination as to [plaintiff's] entitlement to liquidated damages, the district court was required to await the finding of the jury about willfulness."); *Fuentes v. CAI Int'l, Inc.*, 728 F. Supp. 2d 1347, 1360 (S.D. Fla. 2010) ("Before the Court may entertain the defense of 'good faith,' the jury must determine whether defendants violated the FLSA and whether such violation was willful for purposes of determining whether the three year statute of limitations applies. Thus, the good faith issue presents fact issues that must be decided by a jury.").

proper because CGH admitted that it paid Plaintiff straight time for all hours worked; CGH knew that technicians were working overtime without receiving overtime pay; and Project Manager John Carlson "discussed" the issue with CGH's former Chief Operating Officer ("COO") Glyn Owen ("Owen"). (MSJ 7). Plaintiff's record citations do not support his claim that Carlson "discussed" the issue with Owen.[8] Instead, the record shows that Owen unilaterally decided that: (1) CGH technicians, when hired, could elect to be classified as W-2 employees (rather than 1099 independent contractors), and (2) the technicians would be treated as part-time hourly employees and, thus, not eligible for overtime pay. (SOF ¶¶ 32-33). Owen instructed the CGH Project Managers not to pay overtime to the technicians. (*Id.* ¶¶ 33-36). Owen continued to insist that technicians be treated as part-time employees ineligible for overtime pay even after the Project Managers told him that many technicians were working over 40 hours in a week. (*Id.* ¶ 34).

Owen did not consult with the HR Department or Ms. Troutman about these decisions and instructions, nor did he advise them that technicians were working overtime hours. (*Id.* ¶ 35). Ms. Troutman had no knowledge that the technicians were working overtime hours or that Owen had directed CGH's Project Managers not to authorize the payment of full overtime pay for technicians who may have worked over 40 hours in a given week until November 2019, shortly after Pennington served his Complaint on CGH. (*Id.* ¶ 36). When Ms. Troutman learned of Owen's directives,

[8] Carlson testified it was not a "discussion" but "a statement" on the part of Owen. (Transcript of Deposition of John Carlson (Dkt. 56-2), at 48:9-19).

CGH promptly rejected the overtime policy that Owen had set; began to pay the technicians time-and-a-half for hours worked in excess of 40 hours per week; and promptly terminated Owen for cause. (*Id.* ¶ 37).[9] Thus, genuine issues of material fact exist as to CGH's good faith defense.

## VI. <u>SUMMARY JUDGMENT ON THE COUNTERCLAIMS IS IMPROPER</u>

### A. <u>CGH Is The Real Party in Interest and Has Standing</u>

#### 1. Pennington's Real Party in Interest Defense Must Fail

For the first time, Pennington raises a real party in interest defense to CGH's Counterclaims in his Motion. The Court should find that Pennington waived the Rule 17 defense by failing to timely assert it. *See, e.g.*, *Brice Bldg. Co., Inc. v. Clarendon Am. Ins. Co., Inc.*, No. 3:07-CV-196, 2008 WL 11342541, at *3 (N.D. Fla. Oct. 6, 2008) ("a Rule 17(a) defense is waived if the motion is not made with reasonable promptness"); *First Union Discount Union Brokerage Serv's., Inc v. Milos*, 744 F. Supp. 1145, 1152 (S.D. Fla. 1990) ("if the [defendants] had any genuine question whether [plaintiff] was the real party in interest . . . , it was their obligation to raise such question promptly").

In any case, CGH is the real party in interest. Rule 17(a) "directs attention to whether plaintiff has a significant interest in the particular action he has instituted." *Mitsui & Co. (U.S.A.) v. P.R. Water Res. Auth.*, 528 F. Supp. 768, 776 (D.P.R. 1981). Further, "[t]he action does not have to be brought by one who will ultimately benefit

---

[9] On March 26, 2020, CGH filed suit against Owen in D.C. Superior Court, asserting various claims, including a breach of fiduciary duty claim based in part on Owen's egregious acts and omissions in allowing technicians to be classified as W-2 employees and then directing the Project Managers not to pay overtime wages. (SOF ¶ 38).

from the recovery." *Id*. Here, Pennington directed his fraudulent conduct toward his employer, CGH. He submitted false and inflated invoices to CGH and, in turn, received pay directly from CGH, for hours he did not work, miles he did not travel, and per diems he did not earn. (SOF ¶¶ 6, 18-28; JSOF ¶¶ 13-14, 17). CGH's substantive legal rights were violated as a result of Pennington's fraudulent conduct and his unjust retention of benefits to which he was not entitled. CGH relied on Pennington's false and inflated invoices to seek payment from KBR, the prime contractor, for the hours Pennington reported working and the mileage and other travel-related reimbursements he claimed. (SOF ¶¶ 12, 18-28; JSOF ¶ 18). Once CGH learned of Pennington's fraud, CGH committed to pay KBR whatever monies CGH collects after the fact-finder determines the number of fraudulent hours billed by Pennington. (SOF ¶ 41). CGH has assured KBR that it will pay the full amount due, even if it is uncollectible from Pennington. (*Id*.). Moreover, there is no question that, after trial in this matter, CGH will have to reimburse KBR for the amount of its markup on the hours a jury finds to have been fraudulent. (*Id*. ¶ 43). Thus, CGH has a significant interest in its claims for fraud and unjust enrichment against Pennington – namely, to make KBR and, in turn, the FAA whole, and to restore the confidence of KBR and the FAA in CGH, particularly given the upcoming re-compete for CMC Contract. (*See id*. ¶¶ 41, 45).

Pennington wrongly implies that Rule 17(a)(1) lists the only parties that "qualify" as real parties in interest. (MSJ 8). Not so. Rule 17(a)(1) "'is not meant to be exhaustive and anyone possessing the right to enforce a particular claim is the real

party in interest even though he is not expressly identified in the rules and is not beneficially interested in the potential recovery.'" *Corp. of the President of Church of Jesus Christ of Latter Day Saints v. Env'tal Protection Comm'n of Hillsborough Co.*, 837 F. Supp. 413, 415 (M.D. Fla. 1993). "Although not listed among these enumerated persons, an agent 'who acted as an agent during the course of [a] transaction involved in the litigation, may sue for damages suffered by the principal.'" *Id*. (quoting *Mitsui*, 528 F. Supp. at 776). Thus, if the Court determines that CGH is not itself the true owner of the legal interest at issue (it is), then there is a question of fact whether CGH acted as an agent for KBR such that it may sue for damages suffered by KBR.

**2. CGH Still Has Article III Standing**

Article III standing requires a three-part showing: (1) the plaintiff suffered an injury-in-fact; (2) a causal connection exists between the injury and the defendant's conduct; and (3) the plaintiff's injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As the Court found when it denied Pennington's Motion to Dismiss, CGH meets each element of this inquiry and has Article III standing to bring its Counterclaims for fraud and unjust enrichment.

An injury-in-fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. CGH suffered an injury-in-fact when Pennington, a member of its technician workforce, directed false and inflated invoices to CGH, which CGH then relied on to pay Pennington and, in turn, to seek reimbursement from KBR. *See Global Aerospace, Inc. v. Platinum Jet Mgmt., LLC*, No. 09-60756-CIV, 2011 WL 2530943, at *5

(S.D. Fla. June 23, 2011) ("the fact that the money Global paid out came from insurance companies that Global represents rather than from Global's own funds does not change the fact that the tortious conduct at issue was directed toward Global") (finding injury in fact); *Doshi v. Cagle Rd. Land LLC*, No. 3:17-CV-308-J-34JRK, 2018 WL 1796224, at *11 (M.D. Fla. Jan. 23, 2018) (plaintiff "who agreed to the sale of the Property based on the alleged false statements and representations" had standing); *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *8 n.9 (M.D. Fla. Aug. 16, 2016) (fraudulent misrepresentation is a legally cognizable harm). To reiterate, Pennington directed his fraudulent conduct at CGH, and accepted payments (which were fraudulently procured and unearned) from CGH. (SOF ¶¶ 6, 18-28; JSOF ¶¶ 13-14, 17).

Pennington argues that "CGH does not have an actual injury" because "CGH billed KBR" and "was paid by KBR". (MSJ 10). This is no different from the argument, in his Motion to Dismiss, that CGH "was reimbursed" by KBR for Pennington's fraudulent overcharges. As the Court held then, *Continental 332 Fund, LLC v. Albertelli*, 317 F. Supp.3d 1124, 1145 (M.D. Fla. 2018), is on point and establishes that an aggrieved party which suffered an "invasion of a legally protected interest" – there, civil theft, depositing checks into the wrong bank account "without the right to do so" – has Article III standing even though it was reimbursed for its loss by the bank. (*See* Dkt. 52, at 6-7). Here, the record shows that CGH suffered an injury-in-fact when Pennington submitted false and inflated invoices to CGH and CGH paid him *with CGH dollars* for work he did not do and mileage he did not travel. (SOF ¶¶ 6,

18-28; JSOF ¶¶ 13-14, 17). (*See* Dkt. 52, at 7).

Moreover, CGH has committed to make KBR whole for Pennington's overcharges, so that KBR can in turn reimburse the FAA. (SOF ¶ 41). That these are not "hypothetical '*what ifs*'", as Pennington contends (*see* MSJ 11), is underscored by the fact that KBR recently requested that CGH make an initial payment even before the trial in this case. (SOF ¶ 42). Indeed, CGH has advised KBR that it will make KBR whole to the extent that the overcharges can be accurately calculated and proven even if Pennington is judgment-proof. (SOF ¶ 41). Thus, if any judgment against Pennington cannot be collected, CGH is on the hook to KBR (and, in turn, the FAA) for the entire amount. At the end of the day, even if CGH prevails at trial and collects the entirety of any judgment entered against Pennington, CGH will still need to reimburse KBR for the contract markup it received on the hours Pennington fraudulently billed. (SOF ¶ 43). Further, CGH alone has borne the substantial attorneys' fees, costs and expenses to conduct a thorough and arduous invoice-by-invoice investigation of Pennington's billings and to vigorously pursue the recovery of its damages, not to mention defending against Pennington's Complaint seeking unpaid overtime wages on the basis of his false and inflated invoices. (*Id.* ¶ 44). *See Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1018–19 (M.D. Fla. 2019) (costs of "underlying lawsuits . . . and associated expenses 'exceeding $400,000,' . . . represent an actual concrete and particularized injury-in-fact").

Causation – or "traceability" – is a "'relatively modest burden . . . and even harms that flow indirectly from the action in question can be said to be fairly traceable

to that action for standing purposes.'" (Dkt. 52, at 7 (quoting *Coleman v. CubeSmart*, 328 F.Supp.3d 1349, 1360 (S.D. Fla. 2018)). Pennington reprises his argument that CGH cannot trace its injury to Pennington because, according to him, "(1) CGH's managerial employees told Pennington to bill the way he billed; and (2) CGH reviewed and approved Pennington's time worked and mileage on invoices before they were submitted to KBR." (MSJ 12). Pennington does not aver that the CGH Program Manager and his supervisor told him to submit falsified and fraudulent invoices to overcharge CGH. That was Pennington's doing. There is no evidence to the contrary.

CGH directed its technician workforce to submit invoices on a daily basis; instructed its technicians to ensure that the number of hours reported, travel time, and mileage reported were accurate; instructed its technicians to provide detailed descriptions on their invoices to facilitate more meaningful review; and relied on the technicians to accurately record their hours worked and mileage traveled. (SOF ¶¶ 1-6). Further, Pennington's routine submission of false and inflated invoices went undetected because of Pennington's own actions. In short, he failed to abide by CGH's direction to submit invoices on a daily basis, and found ways to game the system. In particular, Pennington submitted his time in a data dump once or twice a month and spread out his recorded time over two or three different work orders on the same day. (SOF ¶¶ 29-30). This made it more difficult to spot total hours claimed to be worked in a single day, as the invoices were organized by work order for review. (*Id.* ¶ 30).

In addition, Pennington billed time to work orders being handled by a different technician(s), submitted invoices reporting substantial time worked when there is no

record in Track Via that he ever arrived at the FAA site, and reported having worked 12 to 14 hours per day on work orders which did not originate until 6:30 PM or later, according to Track Via, rendering it impossible that he worked the reported hours. (SOF ¶¶ 20, 31). **CGH was not able to detect these abuses because it did not have administrative access to the KBR Track Via system until late 2019.** (*Id.* ¶¶ 17, 31). Thus, "[i]t was Pennington who decided to submit falsified invoices" and "CGH was not in a position to review the billings for potential fraud during his employment". (Dkt. 52, at 8). CGH's injury flows directly from Pennington's submission of false and fraudulent invoices to CGH and, thus, CGH readily meets the relatively modest burden to establish traceability.

CGH's injury is redressible by a favorable judgment. CGH itself has committed to make KBR whole to the extent that the overcharges can be accurately calculated and proven, in the event that Pennington is judgment-proof. (SOF ¶¶ 41-42). A favorable judgment also would relieve CGH's exposure to liability for Pennington's claim that CGH violated the FLSA when it did not pay him overtime wages on the false and inflated hours that he submitted, and the punitive damages sought by CGH would at least partially redress the costs incurred in defending against Pennington's bogus FLSA claims.

### B. <u>CGH Suffered Actual Damages As A Result of Pennington's Fraud</u>

Pennington argues that CGH's Fraud claim "fails as a matter of law" because "CGH does not have actual damages to support a fraud claim." (MSJ 13). In particular, Pennington argues that "CGH did not lose money"; it "actually made

money off Pennington's hours and mileage" and "still has its contract with KBR." (*Id.* 14). CGH seeks to recover damages incurred as a result of Pennington's routine submission of false and inflated invoices to CGH.

CGH relied on Pennington's false statements in the invoices that he submitted as to his hours worked, mileage traveled, and per diem earned, and paid him on the basis thereof. (SOF ¶¶ 6, 18-28; JSOF ¶¶ 13-14, 16-17). CGH's investigation has revealed that Pennington wrongfully overcharged CGH by at least $198,809.83 during the period at issue. (SOF ¶ 28). Having no knowledge of Pennington's overcharges, CGH billed KBR, the prime contractor, for what it paid to Pennington. (*Id.* ¶¶ 10, 12, 16-17; JSOF ¶ 18). CGH has committed to make KBR whole to the extent it has been overcharged by Pennington, so that KBR can in turn reimburse the FAA. (SOF ¶ 41). CGH further has committed that, in the event that Pennington is judgment-proof, CGH will itself make KBR whole to the extent that the overcharges can be accurately calculated and proven. (*Id.*). Accordingly, to the extent that CGH is able to prove its entitlement to damages, damages recovered from Pennington will be used by CGH to repay KBR so that KBR can, in turn, reimburse the FAA for Pennington's wrongful overcharges. In addition, there is no question that, even if CGH prevails at trial and collects the entirety of any judgment entered against Pennington, CGH will need to reimburse KBR for the amount of its markup on the hours a jury finds to have been fraudulent. (*Id.* ¶ 43). Thus, the record shows that CGH suffered and will suffer damages. Further, "the issue of fraud is not properly the subject of summary judgment because a resolution of the issues involved" turns on factual determinations. *Inter-Tel,*

*Inc. v. W. Coast Aircraft Eng'g, Inc.*, No. 8:04-CV-02224, 2006 WL 3335050, at *8 (M.D. Fla. Nov. 16, 2006).[10]

### C. <u>Plaintiff Fails To Establish An *In Pari Delicto* Defense To CGH's Unjust Enrichment Claim Against Him</u>

"[T]o assert an *in pari delicto* defense, a defendant must show that 'the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress.'" *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 802 (11th Cir. 2015). "Determining the application of *in pari delicto* requires a court to make a factual inquiry to determine, among other issues, 'whether plaintiff's guilt is far less in degree than defendant's, so as to make the doctrine inapplicable.'" *Wiand v. EFG Bank*, No. 810-CV-241, 2012 WL 750447, at *6 (M.D. Fla. Feb. 8, 2012).

Pennington contends that CGH's Unjust Enrichment claim fails because it is *in pari delicto* on the basis that CGH had an obligation under the FLSA to "keep accurate timekeeping records of its hourly employees' time worked"; and CGH reviewed and approved Pennington's hours worked and mileage. (MSJ 14-15). Yet, as the record makes clear, CGH was not complicit in Pennington's practice of routinely submitting false and inflated invoice – indeed, it was not even aware of his fraudulent practices until it began its investigation after Pennington claimed, in an answer to the Court's interrogatories in late January 2020, that he had worked 4,547 overtime hours in a three (3) year period. (SOF ¶ 16).

CGH relied on the invoices submitted by Pennington, expected them to be

[10] KBR recently requested that CGH make payment even before the trial in this case.

accurate, and paid Pennington on the basis of those invoices. (*Id.* ¶¶ 1-6; *see also* JSOF ¶ 17). Pennington's fraudulent conduct went undetected during the course of his tenure on the technician workforce because of Pennington's own actions. Pennington submitted his time in a data dump once or twice a month and spread out his recorded time over two or three different work orders on the same day. (SOF ¶¶ 29-30). CGH personnel organized the invoices by work order for review and, thus, Pennington's total hours claimed to be worked in a single day were not readily apparent. (*Id.* ¶ 30). Many of Pennington's abuses were not detectible (such as billing time to work orders handled by other technicians or for work he never performed) because he worked remotely and CGH did not have administrative access to the KBR Track Via system until late 2019. (*Id.* ¶ 31). CGH terminated Pennington's employment, effective immediately, when it learned from KBR that an FAA representative had witnessed Pennington "taking long idle periods", which CGH interpreted to mean sleeping on the job. (*Id.* ¶¶ 13-14). Still, CGH had no reason to suspect that he routinely had submitted false and inflated invoices until he claimed in this litigation to have worked over 14 hours per day, 5 days per week, for 52 weeks per year, and CGH undertook its investigation in response to those claims. (*Id.* ¶¶ 16, 18-28). Thus, Pennington alone is responsible for the false and fraudulent billing.

## VII. CONCLUSION

For the foregoing reasons, CGH respectfully requests that the Court deny Pennington's Motion for Summary Judgment in its entirety.

Dated: March 31, 2021

Respectfully submitted,

LITTLER MENDELSON, P.C.
111 North Orange Avenue, Suite 1750
Orlando, Florida 32801
Ph: 407-393-2900 | Fax: 407-393-2929

By: */s/ Nancy A. Johnson*
Nancy A. Johnson
Florida Bar No. 597562
najohnson@littler.com

Paul J. Kennedy
pkennedy@littler.com
LITTLER MENDELSON, P.C.
815 Connecticut Ave. NW, Suite 400
Washington, DC 20006
Ph: 202-842-3400 | Fax: 202-842-0011

Christopher Kip Schwartz
kschwartz@ulmer.com
ULMER & BERNE LLP
1054 31st Street NW, Suite 280
Washington, DC 20007-4453
Ph: 202-342-0414 | Fax: 202-330-5272

Christiane McKnight
cmcknight@ulmer.com
ULMER & BERNE LLP
500 West Madison Street, Suite 3600
Chicago, IL 60661-4587
Ph: 312-658-6500 | Fax: 312-658-6529

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of March, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy via email to all counsel of record.

*/s/ Nancy A. Johnson*
Nancy A. Johnson